Dimitar Slavchev Savov

61 Nishava str. ent. A, fl. 3, apt. 6

Sofia 1680

Bulgaria

+359 88 99 88 313

dimitar.savov@ymail.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DIMITAR SAVOV, | CIVIL ACTION FILE |
| PETITIONER, | NO. 2:22-cv-00401-GMN-DJA |
| V. | |
| IMMUNOTECH LABORATORIES, INC., | |
| RESPONDENT. | |

## VERIFIED PETITION FOR APPOINTMENT OF CUSTODIANSHIP

COMES NOW, Dimitar Savov ("Savov"), and herein files this Verified Petition to be Appointed Custodian of Immunotech Laboratories, Inc., and shows this Court as follows:

1. Immunotech Laboratories, Inc. ("Immunotech") is a Nevada Corporation and the company stock were formerly publicly traded on OTC Pink Markets.

2. Currently, Immunotech is on the Expert Market and carries the "Dark and Defunct" and "Caveat Emptor" signs, as the company has failed to file Disclosures to the OTC Markets for the past 5 years and no longer operates its business.

3. According to Nevada's Business Portal, Immunotech is currently placed on Administrative Hold.

4. According to Nevada's Business Portal, the last registered office was located at 3907 KOHLER WY, N LAS VEGAS, NV, 89032, USA, and its registered agent for service at such address was LEGAL SELF HELP.

5. The last address listed for the officers and directors for Immunotech listed for the directors and officers in the last filing with the Nevada Secretary of State was located at 6108 sumter ct, Frisco, TX, 75035, USA.

6. Savov is a Citizen of the Country of Bulgaria.

7. Savov is the owner 73,000,000 Immunotech common stock, 120,000,000 Immunotech Series B preferred stock, and 4,000,000 Immunotech Series A preferred stock, which is 23.6% of all outstanding company stock. See pages 1-3 of Exhibit A.

8. Immunotech is a drug development company committed to the commercialization of its proprietary proteins for the treatment of debilitating infectious diseases.

9. Immunotech's flagship compound ITV-1 is a suspension of Inactivated Pepsin Fragment (IPF), which studies have shown is effective in the treatment of HIV.

10. Immunotech is the owner of 49% in Immunotech Laboratories BG LTD, UIC 202326744, ("IMMB BG"), in which Savov owns 51% and is President, meaning that Immunotech will receive 49% of all profits generated by IMMB BG.

11. On December 28, 2012 Immunotech signed an Exclusive Rights Agreement ("Agreement") with IMMB BG for the production and distribution of United States Patent $N^o$ 7,479,538, 7,625,565, 8,066,982, 8,067,531, 8,309,072 for a term of 9 years, which was automatically renewed on December 28, 2021 and is valid until December 28, 2030.

12. From 2013 to 2019, IMMB BG, funded by Savov, has wire transferred a total of $435,200 to Immunotech and $246,300 to Harry Zhabilov ("Zhabilov"), CEO of Immunotech at the time, in order to fund the business of Immunotech and the project of ITV-1; these wire transfers do not include the additional expenses for the project in Bulgaria. See pages 1-130 of Exhibit B.

13.  Pursuant to the Agreement, IMMB BG, funded by Savov, completed Phase I, Phase II, and Phase III, a Clinical Trial on ITV-1in Specialized Hospital for Active Treatment of Infectious and Parasitic Deceases "Professor Ivan Kirov", which successfully concluded in November 2016 and in which ITV-1 showed useful treatment effect that is cost-effective compared to available therapies.

14. The last step to bring ITV-1 to the market and receive a permit for mass use, is Phase IV, which requires for 3 validation batches ("validation") to be produced.

15. On July 11, 2017, IMMB BG wired IMMB $190,000 as a down payment for the validation pursuant to an agreement that was provided to Savov between Immunotech and Pyramid Laboratories, Inc. ("Pyramid"), a manufacturing facility adhering to GMP standards, which had previously produced the vials of ITV-1 that were used in the clinical trial. See page 1 of Exhibit C.

16.  Subsequently, on April 4, 2018, Savov made contact with Medhad Gorgy ("Gorgy"), President and CEO of Pyramid, with the desire to pay the remaining amount for the validation, so the 3 batches along with the supporting documentation can be shipped to Bulgaria following the necessary guidelines so IMMB BG can complete Phase IV. See page 2 of Exhibit C.

17.  Gorgy informed Savov that only 1 batch was produced and that Zhabilov had altered the instructions for the production specified in the original contract, further stating that due to

1    the alterations, Immunotech had paid $129,000, not $190,000 to Pyramid as down payment. See

2    pages 2-6 of Exhibit C.

3        18.  The guidelines for the validation are extremely rigid and the significant alterations

4    made by Zhabilov rendered what was supposedly produced by Pyramid to not adhere to the

5    guidelines.

6        19.  Zhabilov was well aware of that and coupled that he had ordered domestic shipping,

7    shows that Zhabilov had no intention in assisting IMMB BG for the validation and completing

8    Phase IV, as he misappropriated the funds allocated for the validation in detriment to

9    Immunotech.

10       20.  Previously, Immunotech was in the process of a merger with Eco-Petroleum Solutions,

11   Inc. ("ECPO"), which was terminated on January 15, 2018, but Savov and the shareholders of

12   Immunotech were not notified of the termination.

13       21.  Unbeknownst to Savov and the other shareholders, on March 26, 2018 Zhabilov signed

14   an Asset Purchase Agreement (APA) with ECPO, attempting to transfer all of Immunotech

15   assets to ECPO for his own personal benefit.

16       22.  The execution of the APA was only publicly disclosed in "Quarterly Report - Financial

17   statements for the period ending March 31, 2018" published by ECPO on June 4, 2018 and was

18   omitted from the ECPO Disclosures published on April 24 and April 25, 2018, but the actual

19   APA has not been provided to the shareholders of Immunotech and ECPO, currently named

20   Enzolytics, Inc. (ENZC), and is actively hidden to this day.

21       23. There are no Disclosures by Immunotech, which mention the APA or the termination of

22   the merger.

1    24. Since then, Zhabilov, along with a network of accomplices, some of whom had

2   previously been convicted for securities fraud, has actively used ENZC to engage in a "pump

3   and dump" scheme, regarding which Savov to this date has filed 8 TCR Reports with the

4   Securities and Exchange Commission ("SEC") with numbers 15849-260-890, 15876-297-564,

5   16276-165-023-757, 16298-795-764-119, 16324-399-651-906, 16359-595-112-440, 16403-

6   899-201-012, 16437-188-799-527, 16445-372-402-005 and continues to investigate.

7    25. Zhabilov had previously made attempts to pump the shares of Immunotech during the

8   Ebola crisis in 2014, which led the SEC to suspend the trading of Immunotech stock and placed

9   a Caveat Emptor sign. See pages 1-15 of Exhibit D.

10    26. What is more interesting that the October 21, 2014 Press Release, which was one of the

11   reasons for the suspension, was issued by Billy V. Ray Jr. ("Ray") through BusinessWire and

12   listed him as the contact for Immunotech after Ray had been sentenced on October 17, 2014 to

13   8 months in prison and 3 years' probation in the United States District Court for Securities

14   Fraud pursuant to 18 U.S.C. § 1348. See pages 16-23 of Exhibit D.

15    27. Zhabilov had signed an agreement with Camelot Nevada Trust ("Camelot"), which is

16   owned by the family of Ray and the website Alignable lists Ray as the team of Camelot, for

17   "accounting and business development services" in July 14, 2014 while Ray was prosecuted by

18   both the SEC (0:14-cv-61195-BB) and the US government (0:14-cr-60109-WJZ).

19    28. Despite the fact that Ray was convicted of securities fraud, that no accounting and

20   business development services were performed, as evident from the lack of disclosures or

21   business activity for 2015, 2016, Immunotech did not terminate the agreement with Camelot,

22   the company in fact amended it on July 1, 2017, and accrued significant debt of $525,000

23   pursuant to that agreement. See pages 8-30 of Exhibit E.

29. The debt was transferred with the APA and Camelot later sold the debt to Livingston Asset Management LLC ("Livingston"), a toxic debt company, which converted it, along with other debt, into 530,000,000 ENZC common stock. See pages 1-7 of Exhibit E.

30. Ray is currently "appointed by company management to handle securities and finance issues for the company [ENZC]", which has not been publicly disclosed, but Savov found out from "CIMARRON CAPITAL, LTD. and KONA CONCEPTS, INC., v. ENZOLYTICS, INC." (4:21-cv-00321-SDJ) and Ray continues to work closely with Zhabilov.

31. The actions described in paragraphs 26-28 is one of the ways in which Zhabilov in conjunction with his accomplices syphons the public companies, which he governs, i.e., by accruing debt on false pretense and later converting it into company stock that can be sold on the market, all of which is in detriment to the earnest investors of the company, in this case Immunotech.

32. Zhabilov has made no significant attempts to remove the Caveat Emptor sign and has lied to Savov and most likely to other shareholders that it is not possible.

33. The last Disclosure by Immunotech on the OTC Market was published on February 6, 2017 and since then Zhabilov had practically abandoned the company in breach of his fiduciary duties and with intent to defraud the shareholders of Immunotech.

34. Immunotech has not filed the Annual Report to the Nevada Secretary of State for 2018, 2019, 2020, 2021 and was inactive until August 11, 2021.

35. On October 21, 2020, using the 2016 shareholder list at his disposal, Savov mailed letters to shareholders with larger stock ownership in Immunotech to seek their assistance in reviving the company, which is one of the many efforts that Savov has made to continue the

1   business of Immunotech and protect the interests of the shareholders. See pages 1-3 of Exhibit

2   F.

3       36.  On August 11, 2021, Zhabilov signed as President a Certificate of

4   Reinstatement/Revival of Immunotech filed with the Nevada Secretary of State, listing himself

5   as President, Treasurer, Director, and Secretary. See pages 1-4 of Exhibit G.

6       37.  On December 11, 2021, Savov provided Zhabilov with a Written Demand Pursuant to

7   NRS 78.257 to obtain, make a copy, and conduct an audit of the books of account and all

8   financial records of the company, for which Savov authorized Clifford Redekop ("Redekop"), a

9   resident of Nevada, to further contact Zhabilov to make the necessary arrangement and obtain

10  the corporate documents. See pages 1-7 of Exhibit H.

11      38.  Redekop contacted Zhabilov to arrange to gain access to the documents, but Zhabilov

12  refused to provide such access and subsequently went into hiding, which has prohibited Savov

13  from exercising his rights as an owner of more than 15% of all outstanding shares in

14  Immunotech.

15      39.  Subsequently, on January 2, 2022, Savov contacted Joslyn Claiborne ("Claiborne") who

16  is Managing Director at Pacific Stock Transfer ("Pacific"), the transfer agent of Immunotech, to

17  seek assistance with the desire to bring Immunotech to current status. See page 2 of Exhibit I.

18      40.  On January 6, 2022, Claiborne informed Savov that Zhabilov had officially resigned in

19  writing to Pacific in November 2019 from all positions, leaving Immunotech without

20  management and without informing the shareholders of the company. See page 1 of Exhibit I.

21      41.  No shareholder meetings have been conducted before or since Zhabilov resigned in

22  November 2019 and Zhabilov has not been reappointed to any position in Immunotech since,

1   which means that on August 11, 2021 Zhabilov made a Fraudulent Filing Pursuant to NRS

2   225.084.

3      42.   On February 23, 2022, Savov filed a Forged or Fraudulent Filing Complaint Form

4   Pursuant to NRS 225.084 with the Nevada Secretary of State. See pages 3-7 of Exhibit J.

5      43.   Despite Zhabilov's breach of fiduciary duties and resignation, Zhabilov remains in

6   functional control of Immunotech and its records, but in practice Immunotech has abandoned its

7   business.

8      44.  IMMB BG and Savov have the ability and are ready to complete Phase IV by producing

9   3 validation batches in Bulgaria and receive a permit for mass use for ITV-1, but require that

10  Immunotech who is a 49% stakeholder in IMMB BG to be a functional company with a

11  management that will act to the benefit of the shareholders of Immunotech.

12     45.  IMMB BG has signed Distribution Agreements for several countries across Europe and

13  Africa with an estimated profit from the sale of each set of ITV-1 of around €1,600 and the

14  ability to distribute millions of sets per year after receiving the permit for mass use, which

15  outlines a good sustainable future for Immunotech as a receiver of 49% of said profits and a

16  sizeable return of the investment to the company's shareholders.

17     46.   There is also a humanitarian aspect, as ITV-1 can help millions of people across the

18  world who suffer from debilitating infectious diseases to receive proper treatment to their

19  illnesses.

20     47. Pursuant to 28 U.S.C. § 1332(a), the Court has subject matter jurisdiction, as Savov is a

21  citizen of Bulgaria and Immunotech is incorporated in Nevada, and the matter in controversy

22  exceeds $75,000.

1    48.  Pursuant to Nevada Revised Statutes § 78.347(1)(b) Immunotech has abandoned its

2    business and has failed within a reasonable time to take steps to dissolve, liquidate or distribute

3    its assets in accordance with this chapter.

4    49.  Pursuant to Nevada Revised Statuses § 78.347(1), Savov, as a shareholder, may apply

5    to this Court to appoint one or more persons to be custodians of the corporations.

6    50.  Savov seeks to obtain a custodianship for the primary purpose of protecting

7    Immunotech from further damages that can be caused by Zhabilov and of bringing Immunotech

8    back to OTC Pink Market by removing the "Dark and Defunct" and "Caveat Emptor" sign by

9    following all necessary procedures prescribed by the law and the regulators, so that

10   Immunotech can function properly to the interests of the shareholders.

11   **WHEREFORE,** Petitioner prays for an Order appointing him as custodian of Immunotech

12   Laboratories, Inc., and for such other and further relief deemed necessary and just.

13          Dated this 3rd day of March, 2022

14

15                                                    DIMITAR SAVOV

1  UNITED STATES DISTRICT COURT

2  DISTRICT OF NEVADA

3

4  DIMITAR SAVOV,                                 CIVIL ACTION FILE

5        PETITIONER,                              NO. _____

6  V.

7  IMMUNOTECH LABORATORIES, INC.,

8        RESPONDENT.

9

10                              **Verification**

11        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that the facts and

12  allegations set forth above are true and correct.

13        Executed on this the 3rd day of March, 2022

14
15                                                    _____
                                                      Dimitar Savov

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | DISTRICT OF NEVADA |

| | | |
|---|---|---|
| 3 | DIMITAR SAVOV, | CIVIL ACTION FILE |
| 4 | PETITIONER, | NO. _____ |
| 5 | V. | |
| 6 | IMMUNOTECH LABORATORIES, INC., | |
| 7 | RESPONDENT. | |
| 8 | | |

9                                               **DECLARATION UNDER OATH**

10         1.     My name is Dimitar Savov. I am over the age of twenty-one, am competent, and

11 have personal knowledge of the matters set forth below.

12         2.     I give this affidavit in support of my petition to be appointed custodian of

13 Immunotech Laboratories, Inc., a Nevada Corporation.

14         3.     Pursuant to NRS § 78.347(2), and to the extent it is necessary, I attest to the

15 following:

16             a)  I have never applied to any court in any jurisdiction for custodianship of any

17                  entity.

18             b)  N/A

19             c)  N/A

20             d)  I have never been a party to any criminal, administrative, civil, NASD, Securities

21                  Dealers, or SEC investigation, violation, or conviction.

1      e) There are no known current officers for Immunotech. The last known officer was

2             Harry Zhabilov who resigned in November 2019.

3      f) Through a written demand send by myself to Zhabilov and subsequent attempts

4             by my representative for this matter Clifford Redekop, I have demanded

5             compliance with NRS 78.257, but Zhabilov has avoided compliance.

6    4. I understand that I am or may be obligated to comply with the following:

7      a) Comply with the provisions of NRS 78.180 or 80.170, as applicable and submit

8             evidence of compliance with this paragraph to the Court.

9      b) Provide reasonable notice to all shareholders of record of a shareholder meeting

10            to be held within a reasonable time after an application for custodianship or

11            receivership has been granted. The custodian shall submit evidence of

12            compliance with this paragraph to the district court.

13      c) Provide the district court with a report of the actions taken at the shareholder

14            meeting noticed by the custodian.

15      d) Provide the district court with periodic reports, at intervals to be determined by

16            the court, of the activities of the custodian and the board of directors and the

17            progress of the corporation.

18      e) Provide any other information deemed necessary by the court.

19    5. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

20   foregoing is true and correct.

21   Executed on this the 3rd day of March, 2022.

22

23                                             Dimitar Savov